IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PHILLIP PETRONE, on behalf of himself and all those similarly situated, BRIAN PANKZ, on behalf of himself and all those similarly situated, STEWART FISHER, on behalf of himself and all those similarly situated, and JASBIR SINGH, on behalf of himself and all those similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | 8:12CV307 |
| v. | ) ) | |
| WERNER ENTERPRISES, INC., and DRIVERS MANAGEMENT, LLC | ) ) ) | MEMORANDUM AND ORDER |
| Defendants. | ) ) | |

This matter is before the Court on the motion of plaintiffs to certify a class for their state law claims under Rule 23 (Filing No. 23).

I. Background

Plaintiffs have requested certification of "a class that includes all drivers who have been employed in Defendants' Student Driver Program during the period from five years prior to the filing of Plaintiffs' Complaint until present." (Filing No. 24, 10). Plaintiffs contend that all employees who participated in the Student Driver Program were subject to a common compensation calculation system that was programmed to consider only the time for which the drivers indicated they were "on duty"

and to exclude from calculations any time for which the drivers indicated they were "off duty." Plaintiffs contend that such a system is problematic because the drivers were instructed to log "on duty" and "off duty" time in accordance not with statutory wage definitions or contractual compensation arrangements but with definitions used by the Department of Transportation to limit the amount of time that a particular driver is allowed to drive without rest. Plaintiffs' state-law theories include violation of Nebraska's Hour and Wage Act (Neb. Rev. Stat. §§ 48-1201 to 48-1209), violation of Nebraska's Wage Payment and Collection Act (Neb. Rev. Stat. §§ 48-1228 to 48-1232), unjust enrichment, breach of an implied contract, and breach of an express contract. Though the underlying facts apply to all theories of recovery, the class action certification issues differ.

II. Legal Standard

For certification of a class under Federal Rule of Civil Procedure 23, plaintiffs must show that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

-2-

>>(4) the representative parties will fairly and adequately protect the interests of the class.

FEDERAL RULE OF CIVIL PROCEDURE 23(a).

In addition, plaintiffs must satisfy one of the three requirements in Rule 23(b). In the present case, plaintiffs claim class action status under 23(b)(3) for which the Court must find "that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). Such analysis cannot be conducted "without reasonable specificity" in the plaintiffs' pleadings. *Id*. (quoting *Johnson v. Georgia Hwy Express, Inc.*, 417 F.2d 1122, 1126 (5th Cir. 1969)). In addition, rigorous analysis "may require the court to resolve disputes going to the factual setting of the case, and such disputes may overlap the merits." *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005). "Nonetheless, such disputes may be resolved only insofar as resolution is necessary to determine the nature of the evidence that would be sufficient, if the plaintiff's general

allegations were true, to make out a prima facie case for the class." *Id*.

III. Analysis

A. Numerosity

The Eighth Circuit has refused to set an arbitrary number at which joinder of all members becomes impracticable. *See Paxton v. Union Nat. Bank*, 688 F.2d 552, 559 (8th Cir. 1982). Rather, the Circuit considers the number of individuals in the class, the magnitude of monetary damages for individual claims, the practical inconvenience of individualized litigation, and "any other factor relevant to the practicability of joining all the putative class members." *Id*. at 559-60.

Plaintiffs allege that the putative class consists of at least 41,000 truck drivers. This number is based on an affidavit from one of defendants' employees that was filed in the related FLSA case. In that affidavit, the employee stated that "[d]uring the three years before the initial complaint was filed, 41,826 individuals participated in Werner's student driver program." It is also clear from the pleadings that potential plaintiffs will be widely dispersed geographically, making joinder more difficult. *See Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 55 (8th Cir. 1977) (noting that geographical dispersion should be considered in numerosity analysis). Thus, the Court

finds that plaintiffs have established the impracticability of joining all members of the class.

B. Commonality

Because the plaintiffs have pursued this class action under Rule 23(b)(3), the issue of commonality is addressed below under Rule 23(b)(3)'s more stringent standard.

C. Typicality

"A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1539 (8th Cir. 1996) (internal quotation omitted) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). "The burden is fairly easily met so long as other class members have claims similar to the named plaintiff." *Id.* at 1540 (internal quotation omitted) (quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.*

Here, the named plaintiffs allege claims stemming from the same conduct as other class members: defendants' systematic denial of compensation for breaks and certain periods of sleeper-berth time which, subject to general commonality concerns

-5-

discussed below, are identical to the claims of other potential class members. Nothing about the class representatives' claims mark them as unique. Plaintiffs have met their burden on the typicality requirement.

D. Adequacy

"The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982) (citing *Gonzales v. Cassidy*, 474 F.2d 67, 72 (6th Cir.1973)). "[The] inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). "Representatives must be part of the class and possess the same interest and suffer the same injury as the class members." *Id*. at 594-95.

Here the common practice of the defendants served to deprive both named plaintiffs and other class members of wages for allegedly compensable work time. Nothing about the representatives' legal claims or factual circumstances suggest that the representatives' interests in pursuing the litigation will diverge from the class as a whole.

E. 23(b)(3)

Plaintiffs must also satisfy one of the three subsections of Rule 23(b). Plaintiffs have pressed their claim under Rule 23(b)(3) which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 1. Wage Payment and Collection Act

The Wage Payment and Collection Act only provides for regular payment of wages that are otherwise due and penalties for failing to comply. *See* Neb. Rev. Stat. § 48-1230, 48-1231. Thus, liability under the WPCA will turn on whether Nebraska law otherwise provides for compensation based on plaintiffs' alleged facts. If there is an underlying basis for payment, the WPCA will be triggered for all plaintiffs, though the exact amount owed may differ.

### 2. Wage and Hour Act

On their face, plaintiffs' claims suggest a common injury among the class members: trainees in Werner's program logged their time in the same way, compensation for all class members was calculated in the same way based on those logs, and the compensation calculation violated Nebraska statutes when it failed to compensate for certain periods logged as "off duty"

which, though they did not constitute active work time, are nonetheless compensable.

Defendants argue that the minimum wage claim depends on individualized showings that the workers were engaged in activities that primarily benefitted the defendants during the "off duty" periods. Defendants premise their argument on the language of Nebraska's minimum wage statute which defines wages as "remuneration for personal services." Neb. Rev. Stat. § 48-1202(5). Defendants argue that the statutory language requires compensation only for services rendered, not per se categories of off-duty time as are compensable under Department of Labor regulations for the FLSA. Defendants contend that even if some "off duty" time is compensable, the statutory language would require individualized showings that the employee spent time for the primary benefit of Werner while logged as "off duty."

Plaintiffs insist that no such showing is necessary because the time spent in the sleeper berth and the short breaks taken by the drivers were compensable as a matter of law. To support this contention, plaintiffs urge the Court to view the United States Department of Labor's regulations as "persuasive authority" in interpreting Nebraska's Wage and Hour Act. The DOL's regulations require compensation, under certain

circumstances, for periods in which the employee is not actively working.[1]

If such breaks are not per se compensable under the Nebraska Wage and Hour statute, plaintiffs' "common contention" regarding the injury they suffered dissolves into individualized inquiries regarding how each plaintiff spent "off duty" time and whether it was for the benefit of Werner. Thus, the predominance analysis, as well as the commonality analysis, hinge on interpretation of Nebraska's Wage and Hour Act. No Nebraska

---

[1] "Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time." 29 C.F.R. § 785.18.

"An employee who is required to be on duty for less than 24 hours is working even though he is permitted to sleep or engage in other personal activities when not busy. A telephone operator, for example, who is required to be on duty for specified hours is working even though she is permitted to sleep when not busy answering calls. It makes no difference that she is furnished facilities for sleeping. Her time is given to her employer. She is required to be on duty and the time is worktime." 29 C.F.R. § 785.21.

"Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked." 29 C.F.R. § 785.22.

-9-

cases are determinative of this issue. Neither do any cases give the Court guidance as to whether the Nebraska Supreme Court would look to DOL regulations in interpreting the scope of the Nebraska Wage and Hour Act. However, the Court finds sufficient evidence from the language, purpose, and legislative history of the Nebraska statute to conclude that the NWHA was intended to have substantially the same coverage as the FLSA.

First, the NWHA was passed with heightened awareness of employees that would not be covered under the FLSA: "It was brought out in the hearing that there would be a large number of employees not covered by the Federal Wage-Hour-law effective February 1, 1967. The Committee felt that this group of employees needed some protection establishing a minimum wage." (Committee Statement on LB 35; Jan. 18, 1967). It was in this spirit that the Nebraska legislature crafted and passed the Nebraska Wage and Hour Act to expand the coverage of minimum wage requirements to employees not reached by the FLSA. In the floor debate, the chairman of the Labor Committee explained, "It is a bill primarily designed to improve the welfare of the unfortunate people who are caught in a gray area where even the Federal Government excludes them." (Sen. Danner, Floor Debate of LB 35, p. 82, Jan. 24, 1967). It is unlikely that the Nebraska legislature, in passing a bill to expand coverage to more of the state's employees, intended to craft a bill that offered less

protection than the parallel federal statue on which it was based.

Parallel coverage is also supported by the NWHA's policy statement, which mirrors the language of the FLSA. *Compare*, 29 U.S.C. § 202 ("existence . . . of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers") *with*, Neb. Rev. Stat. § 48-1201 ("safeguard existing minimum wage compensation standards which are adequate to maintain the health, efficiency and general well-being of workers against the unfair competition of wage and hours standards which do not provide adequate standards of living").  Nebraska's adoption of common language to describe the Nebraska Wage and Hour Act's common purpose, further suggests that Nebraska's legislature was attempting to provide the same protections as the federal law.  The NWHA's reference to safeguarding "existing minimum wage compensation standards" further confirms that the NWHA was intended to build upon the standards guaranteed in the FLSA rather than depart from them.  *Id.*

Finally, the Department of Labor's regulations are themselves based on interpretations of the FLSA by federal courts.  *See, e.g.*, *Armour & Co. v. Wantock*, 323 U.S. 126, 131-32 (1944) (rejecting a definition of "working time" limited to periods of physical exertion); *Mitchell v. Greinetz*, 235 F.2d 621

-11-

(10th Cir. 1956) (finding breaks compensable). Notably, the courts' interpretations of "work time" looked past the literal association with periods of exertion to find breaks and waiting periods compensable under the FLSA. The NWHA's "remuneration for personal services" is capable of the same interpretation, and the legislative history cited above counsels toward consistency with federal law.

The Court finds that the Nebraska statute should provide coverage co-extensive with the FLSA for these periods *because* such break time is for the primary benefit of the employer. Just as the breaks in *Armour* and *Mitchell* contributed to the safety and efficiency of the employers in those cases, the Department of Labor has determined that breaks of the kind at issue in the present case are compensable if they meet certain criteria. The Court finds these determinations and the case law from which they derive to be persuasive precedent.

### 3. Contract Theories

Defendants argue that all the plaintiffs' contract theories will require individual assessment of whether a contract term providing for payment of "off duty" time existed between the parties. According to plaintiffs, their "claims rest on the assertion that in the state of Nebraska, any agreement between a truck driver and a trucking company for work in exchange for wages has an implicit term – either via an implied or explicit

term in the agreement or via a quasi-contract unjust enrichment theory - that he or she receive at least the minimum wage as required by Nebraska state law for all hours worked." (Plaintiffs' Reply Brief, Filing No. 49, at 20).  No Nebraska precedents support this contention, and the Court sees no reason to adopt it.  To the contrary, to allow every statutory claim to be shoe-horned into a contract theory would undermine distinctions and limitations regarding administrative procedures, available remedies, and statutes of limitations placed in the statutes by the legislature.

Any remaining contract theory must rely on evidence of "services . . . rendered in expectation that the other party would pay [and] accept[ance of] the services with knowledge of that expectation."  *Tracy v. Tracy*, 7 Neb. App. 143, 149, 581 N.W.2d 96, 101 (1998).  The parities subjective expectations are highly individualized fact questions, leaving no substantial common questions with regard to these claims.

### 4. Damages

If plaintiffs establish liability, they will have to address the damages of each plaintiff according to the timing and circumstances of "off duty" time logged by each plaintiff. Though the amount of damages will be highly individualized to each plaintiff, the process of calculating compensation using the driver's logs will be fairly uniform.

IV. Conclusion

Having reviewed the major elements of the claims and the issues presented, the Court finds that the common issues predominate over the individualized concerns. Major issue of law and fact can be resolved in a single trial, preserving judicial resources and the resources of the parties. The Court also finds that given the efficiency of litigating the common questions of the remaining claims in a single suit, class action is a superior method of adjudicating the controversy. Because the statute of limitations for the remaining claims extends back only four years, the inclusion dates of the proposed class must be duly limited. *See* Neb. Rev. Stat. § 25-206 ("[A]n action upon a liability created by statute, other than a forfeiture or penalty, can only be brought within four years.").

IT IS ORDERED:

1) Certification of a class that includes all drivers who have been employed in defendants' Student Driver Program during the period from four years prior to the filing of plaintiffs' complaint until present is granted.

2) Class certification is limited to claims under Nebraska's Wage and Hour Act and Nebraska's Wage Payment and Collection Act.

3) No later than July 25, 2013, plaintiffs' counsel shall furnish the Court with information upon which the Court can

determine the appropriate appointment of counsel under Rule 23(g).

DATED this 10th day of July, 2013.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court